70 N.J. Super. 176 (1961)
175 A.2d 233
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PETER CAVANNA, FRED FERNICOLA, JOHN J. LORDI, FRANK MARTUCCI, AND ANTHONY NAPURANO, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1961.
Decided November 3, 1961.
*178 Before Judges GAULKIN, KILKENNY and HERBERT.
Mr. Clive S. Cummis argued the cause for the appellants.
Mr. Sanford M. Jaffe, Special Legal Assistant Prosecutor, argued the cause for the respondent (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
Defendants Cavanna, Fernicola, Lordi, Martucci and Napurano were convicted of conspiracy "to violate the Criminal Laws of the State of New Jersey pertaining to the business of a lottery or lottery policy so-called, to wit: N.J.S. 2A:121-3." They appeal. The State filed a cross-appeal, but this has been abandoned.
Their first contention is that "N.J.S. 2A:121-3 is violative of the 14th Amendment of the Federal Constitution and Article 1, Paragraph 1 of the New Jersey Constitution of 1947," because it is "vague and uncertain" and "furnishes no ascertainable standard of guilt." This question was not raised below. Moreover, appellants have not complied with R.R. 1:7-1(c), which provides that "[i]f the questions *179 involved include any not presented to the court below, this fact shall be noted. The foregoing requirements are to be considered in the highest degree mandatory, admitting of no exception * * *."
We are not bound to consider questions not raised below, even though they be constitutional questions (Roberts Electric, Inc., v. Foundations & Excavations, Inc., 5 N.J. 426, 429 (1950)), and we are especially reluctant to consider them when R.R. 1:7-1(c) is ignored. For the foregoing reasons we pass the attack upon the constitutionality of N.J.S. 2A:121-3 without discussion, except to say that we have studied it and find it without merit. Cf. State v. Hudson County News Co., 35 N.J. 284, 291-296 (1961).
The five appellants, together with one Michael Criscuolo, were arrested on June 19, 1959 in the vicinity of 51 Madison Avenue, Newark, N.J., following a raid at that address where, according to the indictment, all six "did unlawfully and knowingly engage as messengers, clerks and copyists in rooms * * * where lottery slips, copies of numbers and lists of drawings were kept and used in connection with the business of a lottery * * *." At the trial the State, after proving the Newark raid and arrests, was permitted to prove, over defendants' objections, that on July 8, 1959 defendants Fernicola, Napurano and Criscuolo had been arrested in a raid on a lottery in North Bergen, Hudson County.
There was nothing in the evidence to connect the two lotteries except that they were both lotteries, that the same make adding machines were used at each location, and that Fernicola, Napurano and Criscuolo were present in North Bergen as well as in Newark. Nevertheless, the trial court charged the jury:
"If you conclude that the said defendants, Fernicola, Napurano and Criscuolo, were engaged in the operation of a lottery in North Bergen, as testified to by Lieutenant Dollar, and that such operation by them was part of the continuation of the conspiracy charged against all of the defendants and that said acts were in furtherance of said conspiracy, then such evidence must be considered by you and weighed with all the other circumstances in the case, as against *180 all of the defendants in this case and is not limited to be considered only against the defendants Fernicola, Napurano and Criscuolo.
On the other hand, if you conclude that said defendants Fernicola, Napurano and Criscuolo were not engaged in the operation of a lottery in North Bergen or that such action was not part of or a continuation of the conspiracy charged in the indictment on which these defendants are being tried or that said acts were not in furtherance of the purpose or scope of said conspiracy, but involved an independent act on their part or a separate and distinct conspiracy or crime, then the testimony of Lieutenant Dollar is to be entirely disregarded by you and you are to decide the case solely on the remaining evidence before you without any regard to the North Bergen incident testified to by Detective Dollar and the other officer."
The jury acquitted Criscuolo, in spite of the fact that he had been arrested in Newark and in North Bergen, but convicted the five appellants. All five contend that the admission of the evidence of the July 8 raid in North Bergen, together with the charge above quoted, constituted prejudicial error. They contend that the proof of the North Bergen raid "constituted a substantial and fatal variance from the offense charged in the indictment" and improperly brought in proof of another offense "as tending to establish the commission of the crime charged in the indictment," citing Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Bullock v. State, 65 N.J.L. 557 (E. & A. 1900), and Helton v. United States, 221 F.2d 338 (5 Cir. 1955).
The State answers that it was entitled to prove any number of overt acts other than the one set forth in the indictment, and that the proof of the North Bergen raid was merely proof of another overt act.
However, since Cavanna, Lordi and Martucci were not present at, or otherwise connected in the testimony with, the North Bergen lottery, the evidence of the acts of Fernicola and Napurano in North Bergen (we omit Criscuolo because he was acquitted) was not admissible against Cavanna, Lordi and Martucci unless the testimony other than that of the North Bergen raid (1) established that a conspiracy existed in which all five appellants were members, and *181 (2) justified the conclusion that the acts of Fernicola and Napurano in North Bergen were done (a) while the conspiracy still existed, (b) while Cavanna, Lordi and Martucci were still members of it, and (c) in furtherance of the purposes of that conspiracy. State v. Carbone, 10 N.J. 329 (1952); State v. Yedwab, 43 N.J. Super. 367, 374 (App. Div. 1957).
The only proof offered by the State that a conspiracy existed prior to the North Bergen raid was the Newark raid and arrests. There was no direct evidence of such a conspiracy. There were no admissions, and no conspirator turned State's witness. The defendants were not even found in 51 Madison Avenue, Newark, but were arrested in nearby streets and cellars. No one had been found in 51 Madison Avenue. Defendants were connected with those premises by circumstantial evidence including proof of scratches on their bodies, and of dirt and paint on their clothes, allegedly accumulated during their flight from said premises through a narrow opening.
When it is proved that defendants participated in the commission of a crime which is usually, if not necessarily, done pursuant to a previous scheme or plan, the jury may infer that there was a pre-existing conspiracy among them. State v. Carbone, supra; State v. Graziani, 60 N.J. Super. 1, 48 (App. Div. 1959), affirmed 31 N.J. 538 (1960). But even though proof of participation by the five appellants in the operation of a lottery in Newark in June permitted an inference that the five had theretofore conspired to do so, it did not, standing alone, also permit the inference that Cavanna, Lordi and Martucci continued as conspirators after their arrest in the Newark raid, or that Fernicola and Napurano participated in the North Bergen lottery on their behalf. Here there were no course of dealing and numerous connected circumstances as there were in State v. Graziani, supra; State v. Goodman, 9 N.J. 569 (1952); State v. Continental Purchasing Co., Inc., 119 N.J.L. 257 (Sup. Ct. 1937), affirmed 121 N.J.L. 76 (E. & A. 1938). See also *182 State v. Klausner, 4 N.J. Super. 427 (App. Div. 1949). The evidence of the North Bergen lottery was not offered to prove the motives or intent with which the five defendants attended at 51 Madison Avenue, Newark. Defendants' motives and intent were not placed in issue in this case. They denied that they were present at all.
For the foregoing reasons, the receipt of the evidence of the North Bergen raid and the charge thereon were error as against Cavanna, Lordi and Martucci. The question then is, was it prejudicial? We are of the opinion that, as Justice Jackson said in Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 791 (1949),
"* * * there should be no straining to uphold any conspiracy conviction where prosecution for the substantive offense is adequate and the purpose served by adding the conspiracy charge seems chiefly to get procedural advantages to case the way to conviction."
The State points to the fact that Criscuolo, who was arrested in the North Bergen raid, was nevertheless acquitted, and argues that this proves that the jury found no connection between the North Bergen lottery and the conspiracy of which the defendants were found guilty; and hence the evidence of the North Bergen raid could not have influenced the verdict. This conclusion is too speculative to settle the question of prejudice. Cf. United States ex rel. DeVita v. McCorkle, 248 F.2d 1 (3 Cir. 1957), cert. denied 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77 (1957).
If the evidence here were strong and clear that the five appellants were in 51 Madison Avenue, Newark on June 19, aiding in the conduct of a lottery, we might be able to say that the admission of the evidence of the North Bergen lottery was not prejudicial to Cavanna, Lordi and Martucci. Cf. Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946); State v. Yedwab, supra. However, although we think the evidence was sufficient to permit a jury to so find, it was not so strong that it can be said with any assurance that the jury would have reached the same *183 conclusion as to Cavanna, Lordi and Martucci without the evidence of the North Bergen raid and the charge based thereon. Therefore, the judgments of conviction of Cavanna, Lordi and Martucci are reversed and, as to them, the case is remanded for a new trial.
However, we find no such error as against Fernicola and Napurano, for the simple reason that they were connected with and apprehended in the operation of the North Bergen lottery, which, it is to be noted, was only 19 days after the one in Newark. Cf. United States v. Laurelli, 293 F.2d 830, 834 (3 Cir. 1961). Cavanna, Lordi and Martucci complained that they were improperly charged with responsibility for the acts of others, but Fernicola and Napurano can make no such complaint. Hence, their only complaint is that there was a variance  i.e., that the North Bergen lottery was a second conspiracy rather than a second overt act. What additional overt acts may be proved under an indictment for conspiracy depends upon the breadth of the language of the indictment, unless narrowed by a bill of particulars. State v. Herbert, 92 N.J.L. 341 (Sup. Ct. 1918); United States v. Terry, 7 F.2d 28, 29 (9 Cir. 1925). The indictment here charges:
"The Grand Jurors of the State of New Jersey, for the County of Essex, upon their oath present that Peter Cavanna, Fred Fernicola, Frank Martucci, John J. Lordi, Michael Criscuolo and Anthony Napurano, between the 16th day of May, 1959 and the 19th day of June, 1959, at the City of Newark, in the County of Essex aforesaid and within the jurisdiction of this Court, did unlawfully conspire each with the other to violate the Criminal Laws of the State of New Jersey pertaining to the business of a lottery or lottery policy so-called, to wit: N.J.S. 2A:121-3.
And the Grand Jurors aforesaid upon their oath do further present that in execution of said conspiracy and to effect the object thereof afterward on the 19th day of June, 1959, at the City of Newark, in the County of Essex aforesaid and within the jurisdiction of this Court, Peter Cavanna, Fred Fernicola, Frank Martucci, John J. Lordi, Michael Criscuolo and Anthony Napurano did unlawfully and knowingly engage as messengers, clerks and copyists in rooms in a building known as number 51 Madison Avenue, in the City of Newark, in the County of Essex aforesaid, where lottery slips, copies of numbers *184 and lists of drawings were kept and used in connection with the business of a lottery or lottery policy so-called, contrary to the provisions of N.J.S. 2A:98-1, against the peace of this State, the government and dignity of the same."
N.J.S. 2A:121-3 is a broad statute. It consists of three sections and provides:
"Any person who:
a. Knowingly engages as a messenger, clerk or copyist, or in any other capacity in or about an office or room in any building or place where lottery slips or copies of numbers or lists of drawings of a lottery, drawn or to be drawn anywhere within or without this state, are printed, kept or used in connection with the business of lottery or lottery policy, so-called; or
b. Knowingly possesses any paper, document, slip or memorandum that pertains in any way to the business of lottery or lottery policy, so-called, whether the drawing has taken place or not; or
c. Being the owner of a building or place where any business of lottery or lottery policy, so-called, is carried on knowingly, by himself or his agent, permits such premises to be so used 
Is guilty of a misdemeanor."
We do not mean to approve the form of the indictment used here. Indeed, we deem it poorly drawn, vague and ambiguous. Cf. State v. Fromm, 65 N.J. Super. 30 (App. Div. 1961); United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588, 594; United States v. Terry, supra; but see Hurwitz v. State, 200 Md. 578, 92 A.2d 575, 577 (Md. Ct. App. 1952); cf. State v. La Fera, 35 N.J. 75, 84-86 (1961). However, the defendants did not attack the indictment, nor demand a bill of particulars. Since the indictment charged a conspiracy to violate all three sections of N.J.S. 2A:121-3, the State could have alleged the North Bergen lottery as one of the overt acts. The pleading of an overt act, however, does not necessarily mean that proof of it will be allowed at the trial. Whether it should be or not is governed by the same rules which govern the admission of other evidence in criminal trials. Here the evidence was properly admitted as against Fernicola and Napurano. As we have indicated, we find that the evidence was sufficient *185 to justify the conclusion that Fernicola and Napurano, together with the other three defendants, had conspired prior to the Newark raid, as charged in the indictment. Fernicola's and Napurano's own acts justified the State's contention that in spite of the Newark raid they continued to carry on, for themselves if not for Cavanna, Lordi and Martucci, the conspiracy and the objects thereof, and made the admission of the testimony proper. It is to be noted that none of the defendants, except Lordi, testified. The fact that Cavanna, Lordi and Martucci had been arrested, or may have dropped out of the conspiracy, before the North Bergen lottery did not necessarily terminate the conspiracy insofar as Fernicola and Napurano were concerned. Marino v. United States, 91 F.2d 691, 698 (9 Cir. 1937); cf. United States v. Russano, 257 F.2d 712, 715 (2 Cir. 1958).
The convictions of Fernicola and Napurano are therefore affirmed.