153 N.J. Super. 201 (1977)
379 A.2d 460
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WARDEL MADDOX, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1977.
Decided September 26, 1977.
*204 Before Judges ALLCORN, MORGAN and HORN.
Mr. Daniel O'Mullan argued the cause for appellant (Messrs. O'Mullan & Brady, attorneys).
Mr. Steven M. Ingis, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney).
The opinion of the court was delivered by HORN, J.A.D.
A grand jury jointly indicted defendant and one Robert Nathan Scott on seven counts: I, committing mayhem, in violation of N.J.S.A. 2A:125-1; II, conspiracy to commit mayhem, in violation of N.J.S.A. 2A:125-1, 2A:98-1 and 2; III, atrocious assault and battery, in violation of N.J.S.A. 2A:90-1; IV, conspiracy to commit atrocious assault and battery, in violation of N.J.S.A. 2A:90-1, 2A:98-1 and 2; V, possessing a "dangerous deadly instrument, to wit, acid or other toxic substance, with intent to use unlawfully against another," in violation of N.J.S.A. 2A:151-56; VI, malicious destruction of personal property, in violation of N.J.S.A. 2A:122-1, and VII, conspiracy to maliciously damage property, in violation of N.J.S.A. 2A:122-1, 2A:98-1 and 2.[1]
On application of the prosecutor the judge granted a severance of defendant and Scott for the purpose of trial. R. 3:15-2(b). During the course of a four-day trial the judge *205 dismissed counts I, II and VII. The jury acquitted defendant of the charge contained in count V and convicted him of atrocious assault and battery (count III), conspiracy to commit atrocious assault and battery (count IV) and malicious destruction of property (count VI).
After unsuccessful post-conviction motions for judgment of acquittal, a new trial, merger of counts III and IV, to sentence only on count III rather than on each of counts III and IV and to mold the verdict on count VI to a disorderly persons conviction under N.J.S.A. 2A:170-36, the judge imposed sentences as follows: on count III, atrocious assault and battery, 6-7 years in State Prison; on Count IV, conspiracy to commit assault and battery, 2-3 years in State Prison, consecutive to the sentence imposed on count III, and on count VI, malicious destruction of property, 2-3 years in State Prison, consecutive to the sentence on count III, for an aggregate term of 10 to 13 years. Defendant then initiated this appeal.
The victim of the crimes found by the jury to have been committed by defendant was a Grover Smith. The jury could reasonably deduce from the evidence produced before it that Smith was having an affair with defendant's wife. In the spring of 1974 defendant confronted Smith with his knowledge of their meetings and demanded that Smith stop seeing Mrs. Maddox. Defendant thereafter sought revenge against Smith. He enlisted the aid of Scott (obviously mentally retarded) to damage Smith's vehicle. He agreed to pay Scott $75 to perform this act. After Scott vandalized the vehicle defendant paid him $90. On the the evening of August 19, 1974 Scott was driven by one Braswell, a friend, to where Smith's car was parked on Spruce Street in Boonton. Scott then punctured all four tires with an ice pick and threw a rock which destroyed the windshield.
Following this incident defendant told Scott that he wanted him to slash Smith's face with a razor. Subsequently, when Scott told defendant that he feared that if he "raked" Smith's face with a razor he might be recognized, defendant *206 suggested that he would procure acid if Scott would throw it in Smith's face. Later either Scott procured a jar of battery acid from a garage where he occasionally worked or defendant provided him with the acid. Scott agreed to throw it in Smith's face on defendant's promise to pay him $500. Defendant then described Smith and pointed him out.
On the evening of September 20, 1974, at about 11:30, Scott lay in wait, hidden by some bushes close by to Smith's house. When Smith came out of his house to go to work, Scott ran up behind him and threw acid from a bottle into Smith's face.[2] Later defendant praised Scott for doing a good job and paid him the agreed amount of $500. In addition to the payments to Scott, defendant also paid $125 to Braswell to leave town.
As a consequence of this latter incident both of Smith's eyes were enucleated. He received a skin graft for the left side of his face and underwent an operation in order to open the side of his mouth.
Defendant first contends that the judge erred in denying his application to sever the damage to the automobile counts from the counts pertaining to the assault on Smith. We disagree.
R. 3:7-6 permits multiple offenses to be charged in the same indictment where they "are of the same or similar character or are based upon the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme." A judge is vested with discretion in determining whether a severance should be granted. State v. Sinclair, 49 N.J. 525, 550 (1967). Ordinarily, whether the judge's discretion should be exercised favorably toward a severance depends upon whether either the State or defendant is prejudiced by a joinder of defendants for the purpose of trial. R. 3:15-2(b).
Of course, the trial of multiple charges always involves "some potential of harm," since the multiplicity alone may *207 possibly suggest to the factfinder a propensity to criminal conduct. State v. Manney, 26 N.J. 362, 368 (1958). However, other important considerations  economy and judicial expediency  must be weighed in making the determination. State v. Aiello, 91 N.J. Super. 457, 466 (App. Div. 1966), certif. den. 48 N.J. 138 (1966), cert. den. 388 U.S. 913, 87 S.Ct. 2106, 18 L.Ed.2d 1351 (1967).
In the present case the victim of the crimes was the same person, the witnesses were substantially the same persons and the motive and intent as well as the scheme or plan of defendant were common to all charges. See Evid. R. 55; Drew v. United States, 118 U.S. App. D.C. 11, 331 F.2d 85 (D.C. Cir.1964). Primarily for these reasons the cases relied on by defendant are distinguishable and lack precedential value.
Finally, our review of the judge's charge discloses that each count was separately discussed, with the clear indication to the jury that each should be considered separately and apart from the others. We find that no prejudice resulted to defendant.
Defendant next asserts that he was deprived of due process because the prosecutor failed to perform his duty to reveal promises or agreements concerning immunity and leniency as to the State's two principal witnesses, Scott and Braswell. State v. Taylor, 49 N.J. 440, 448 (1967).
Notwithstanding the soundness of the legal aspect of this complaint, the record is completely devoid of any factual evidence supporting defendant's contention. It rests on sheer speculation and therefore must be rejected.
The next point advanced is that as a matter of plain error  no objection having been made to the trial judge  the prosecutor's summation improperly referred to matters not in evidence when it was said:
At the time of the arrest, you heard Detective Dumas testify to you that he took a statement about three days after the incident from Robert Scott. You heard Mr. Scott take the stand and you heard him testify that, in fact, he could give a statement at the time and *208 that he laid out exactly what happened and he testified to you about what happened: * * *.
R. 2:10-2 requires an appellate court to disregard errors unless "clearly capable of producing an unjust result." In the absence of an objection at the trial level it may fairly be inferred that in the context of the trial the utterance was of no moment. State v. Macon, 57 N.J. 325, 333 (1971).
In any event, it was harmless. It merely asserted that Scott gave a statement to the police as to the incident. Of importance was the substance of the statement, not the superficial circumstances of when or to whom he made it initially.
Next defendant urges that counts II and IV specify dates as "[o]n or about September 1 to September 20" and yet most of the evidence adduced regarding these conspiracies dealt with conversations on or about August 19, 1974.[3]
This thesis is unsound. A substantial portion of the evidence concerning the conspiracy did take place in the September period, but it is equally clear that certain compelling events concerning the conspiracy occurred in August  principally, that defendant, after Scott damaged Smith's automobile, first broached the subject of physically injuring Smith. Thus, certain evidence concerning events prior to September 1 was presented at trial.
In State v. Pickles, 46 N.J. 542, 579 (1966), the indictment alleged that the child's death occurred "`on or about the 4th day of October 1962,'" whereas the child actually died on October 12. Faced with the same complaint as is made by the instant defendant on appeal, the court held that since time was not an essential aspect of the crime, defendant could not have suffered prejudice from the inexact statement of the date. See also, State v. Kuske, 109 N.J. Super. 575, 586 (App. Div. 1970).
Likewise, in the present case the dates were not essential elements of the crimes; the important aspect was the conspiracy, *209 with the resulting substantive act. Defendant certainly was not misled by the inexact dates of the indictment; he understood why and for what he was being tried. In United States v. Somers, 496 F.2d 723, 742-745 (3 Cir.1974), cert. den. 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974), the court held that a time variance between the indictments and some relevant events is not fatal where "on or about" is employed in the indictment. The judge in that case rejected defendant's arguments for these reasons. We do likewise here.
The next point advanced is that the judge's instruction on prior inconsistent statements was plain error. R. 2:10-2.
Defendant introduced at trial prior inconsistent statements made by witnesses Scott and Braswell. The inconsistencies with regard to Braswell were minor, but prior statements of Scott which were introduced were diametrically opposed to his testimony  that previously he denied any involvement in the partial destruction of Smith's car and the attack on Smith, and thus implicitly denied defendant's involvement. The judge erroneously instructed the jury that these prior inconsistent statements could not be considered as substantive for their truth value, but rather could only be considered as bearing on the credibility of the witnesses. Defendant did not object to this instruction. The State concedes that pursuant to Evid. R. 63(1)(a) such statements can be considered as substantive evidence, but argues that the instruction was harmless.
The burden of showing that the instruction was clearly capable of producing an unjust result is upon defendant. R. 2:10-2; State v. Macon, supra, 57 N.J. at 333. As stated, the variations in Braswell's statements were minor and merit no further attention, e.g., the statements varied slightly as to how much money Braswell received and who suggested using battery acid. However, Scott's prior statements were significant. If the jury believed that the prior statements were true and treated them as such in their deliberations, it *210 would have been compelled to acquit defendant, since in his prior statements Scott maintained that he was not involved in the criminal events; hence, neither was defendant.
A somewhat similar situation arose in State v. Provet, 133 N.J. Super. 432 (App. Div. 1975), certif. den. 68 N.J. 174 (1975). In that case the victim, a 25-year old nurse, was robbed and raped. On direct examination she testified she could see defendant's face during the robbery, but that after she was ordered to unclothe, defendant tied the dress around her head so she could not see. Her testimony was consistent with her statement to the police. On cross-examination she testified that during the rape the dress was removed by defendant and that she could see his face. The trial judge gave a similar instruction to the one given in the present case regarding prior inconsistent statements.
There we determined that the witness's "omission" was to be considered a prior inconsistent statement (at 437). However, we concluded that the instruction was harmless because even if the jury did consider the prior statement only for purposes of credibility it would have served the same purpose as if the jury considered it for its substantive content, since either way the result would have been for the jury to conclude that the dress was not removed from her head during the rape (at 438). That is, if the jury only considered it for credibility purposes and it did adversely affect the witness's credibility, then the jury would not have believed she was truthful in stating that the dress was removed. If, on the other hand, the earlier statement was considered substantively and it was believed by the jury, then obviously the jury would disbelieve the witness's statement that the dress was removed.
Similar reasoning prevails here. If the jury utilized Scott's prior denials of involvement for credibility purposes and thus chose not to believe Scott at trial, the result would have been that the jury could not have believed Scott when he said that he and defendant conspired to and did throw acid in Smith's face. If the jury were allowed to consider the *211 prior statements substantively and believed the prior statements of denial, the result would have been the same  the jury would have believed that Scott was not involved and would have had to conclude that neither was defendant.
Regardless of whether the prior statements were considered for purposes of Scott's credibility or for their substantive content, the effect on the jury's mental processes was the same. We are satisfied that the error was harmless.
Defendant next contends that the imposition of consecutive sentences on the respective atrocious assault and battery and conspiracy counts constituted error. Specifically, defendant contends that the elements of proof required and, in fact, the evidence adduced as to aiding and abetting and conspiracy to commit the atrocious assault and battery, were identical and therefore called for a merger of these two charges. He relies on State v. Madden, 61 N.J. 377 (1972), which held:
Of course, one may be liable as a principal under our aiding or abetting statute even though no conspiracy existed between him and the immediate perpetrator of the substantive crime. And the immediate perpetrator does not become a conspirator with another merely because the other aided or abetted him. The crime of conspiracy requires an actual agreement for the commission of the substantive crime, and unless that agreement in fact existed, each defendant is liable with respect to the substantive offense on the basis of his own conduct with respect to that substantive offense, the perpetrator on the basis of the actual commission of the crime and the other on the basis of any participation in the perpetrator's purpose and deed as comes within the aiding or abetting statute. [at 394]
Defendant misconceives the situation. It is no longer open to question that the crime of conspiracy is a separate and distinct crime from the substantive offense involved in it. Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); State v. Moretti, 52 N.J. 182, 186 (1968), cert. den. 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968); State v. Cormier, 46 N.J. 494, 501 (1966). And separate sentences may be imposed for a conspiracy and the substantive crime involved therein. *212 State v. Louf, 126 N.J. Super. 321, 349 (App. Div. 1973), aff'd in part, rev. in part, 64 N.J. 172 (1973); State v. Oats, 32 N.J. Super. 435, 439-440 (App. Div. 1954).
As the court in Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), noted:
There are, of course, instances where a conspiracy charge may not be added to the substantive charge. One is where the agreement of two persons is necessary for the completion of the substantive crime and there is no ingredient in the conspiracy which is not present in the completed crime. [at 643, 66 S.Ct. 1182; emphasis supplied]
See also, State v. Aircraft Supplies, Inc., 45 N.J. Super. 110 (Cty. Ct. 1957). The key concept of this exception is that an agreement between two persons is necessary for the completion of the substantive crime. It is not enough that in fact in a particular case the elements of proof of the conspiracy are identical to those of the substantive crime. The exception has not been applied where "concerted action was not logically necessary * * *." 1 Anderson, Wharton's Criminal Law and Procedure, § 89 at 193 (1957). In the same treatise examples of when the exception applies are given, to wit: bribery, adultery and concealing a fugitive from justice. Id. at 192.
Atrocious assault and battery by definition does not require a concerted action or a conspiracy; a single person can commit it. In the case at bar it was amply established that there was an agreement or combination to commit the atrocious assault and battery between defendant and Scott. State v. Carbone, 10 N.J. 329 (1952). There was also sufficient proof of more than one overt act. Thus defendant was properly found guilty of participating in the conspiracy.
Since a conspirator is responsible for all the criminal acts of his coconspirators committed in furtherance of the conspiracy, defendant was properly found guilty of the substantive charge. State v. Stein, 70 N.J. 369, 388 (1976); State v. Cooper, 10 N.J. 532, 568 (1952).
*213 Defendant next argues that he could only have been convicted of violating N.J.S.A. 2A:170-36 on the malicious destruction to property charge.
N.J.S.A. 2A:122-1, under which defendant was convicted, reads:
Any person who willfully or maliciously destroys, damages, injures or spoils any real or personal property of another, either of a public or private nature, for which no punishment is otherwise provided by statute, is guilty of a misdemeanor. [Emphasis supplied]
N.J.S.A. 2A:170-36 provides:
Any person who maliciously destroys, defaces, damages or injures property, may, where the damage does not exceed the sum of $200, be adjudged a disorderly person.
The essence of defendant's contention on this point is that since the State failed to establish the monetary extent of the damage it will be presumed that the damage inflicted by him did not exceed $200. Cf. State v. Taylor, 132 N.J. Super. 386 (Cty. Ct. 1975).
However, this argument is foreclosed by State v. Tonnisen, 92 N.J. Super. 452 (App. Div. 1966), certif. den. 48 N.J. 443 (1967), in which the court dealt with precisely the same issue and found that there was no merit to an argument similar to that of defendant. The court there held that the defendant had the burden to establish that the damages did not exceed $200.
We find no merit whatsoever to defendant's remaining contentions. The sentences did not manifest an abuse of the trial judge's discretion. The actions of defendant calculatedly caused untold misery to another human being. It is most difficult to conceive how less than the maximum punishment could in any way be justified in a case such as this. The particular facts of this case, including a finding that defendant procured the services of Scott, behind whom defendant tried to hide, to further his vengeful plot to disfigure and maim Smith, warranted the judge's determining *214 that there was an increased degree of culpability. The sentences imposed were clearly warranted.
We do not find that the verdicts were necessarily inconsistent, as contended, but even if they were in such a case as this it does not entitle defendant to relief. See Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); State v. Roller, 29 N.J. 339 (1959); State v. Still, 112 N.J. Super. 368 (App. Div. 1970), certif. den. 57 N.J. 600 (1971); see Annotation, "Inconsistency of criminal verdict as between different counts of indictment or information," 18 A.L.R.3d 259, 355 (1968). The denial of the motion for a new trial was clearly mandated by the proofs and reasonable inferences therefrom. We find no support in the record for defendant's contention that there was a miscarriage of justice or other reason why he should be granted a new trial. R. 2:10-1; Dolson v. Anastasia, 55 N.J. 2 (1969).
Because we conclude that defendant received a fair trial free of prejudicial error the convictions are affirmed.
NOTES
[1] Initially, on November 6, 1974 the grand jury returned Indictment 174-74-S, which contained only the first four counts. Subsequently, on January 16, 1975 it returned Indictment 357-74-J, which superseded the earlier indictment and included the first four counts and additionally counts V, VI and VII.
[2] The acid was identified as concentrated sulphuric acid.
[3] Count II was dismissed at trial.