**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2225-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

WALI WILLIAMS, a/k/a WALI
ISHMAEL WILLIAMS, WAIL
WILLIAMS, TYRONE WILLIAMS,
TYRONE JOHNSON, TYRONE
THOMAS, TYRONE TELLER, and
TYRONE WATERMELON,

    Defendant-Appellant.

_____

Submitted September 18, 2019 – Decided October 7, 2019

Before Judges Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-02-0462.

Joseph E. Krakora, Public Defender, attorney for appellant (Susan Brody, Assistant Deputy Public Defender, of counsel and on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E.

Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Wali Williams appeals from an August 9, 2017, judgment of conviction after a jury found him guilty of first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and 2C:11-3(a). Defendant was sentenced to a twenty-year term of imprisonment, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. We reverse because the jury instructions constituted plain error.

In March 2014, Anthony Flowers found Kashira Stubbs's driver's license on the ground of a convenience store. Flowers contacted Stubbs on Facebook and offered to return her license for ten dollars. Stubbs agreed to meet Flowers at the same store where the license was found and told defendant's brother of her intentions.

Anthony asked his brother, Damon Rogers, to meet Stubbs. When Rogers arrived at the store, he encountered defendant, who identified himself as Stubbs's brother. Rogers gave defendant the license, and defendant grabbed Rogers by the jacket, asked why he stole Stubbs's license and punched him in the face. Rogers punched back and was able to break free and retreat into the store. Defendant followed Rogers, told him not to return and let him go.

Rogers went home to tell his brothers, Flowers and Quassim Fluker, what had just happened. Flowers and Fluker immediately left to confront defendant. As they approached the store, Fluker recognized defendant standing at the front of a crowd of people. Flowers asked defendant why he had punched Rogers, and defendant said it was because Rogers stole the license. Flowers punched defendant, and, as they struggled, two men, one of whom was later identified as Dennis Russell, stood in front of Fluker. Russell pulled out a handgun and pointed it at Fluker. Fluker recalled defendant reach for his waistband but never saw defendant remove a firearm.

Shots rang out, and Fluker realized he was shot in the abdomen. Fluker was able to run home, where he found Rogers. Fluker told Rogers to locate Flowers, and Rogers found him lying on the ground near the store. Flowers was pronounced dead later that night from two gunshot wounds.

In February 2015, an Essex County grand jury returned an indictment charging defendant, Laquan Dwight, and Russell with: first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a), second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a), and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b).

A-2225-17T1

Defendant was individually charged with first-degree murder, N.J.S.A. 2C:11-3(a)(1).

A jury trial was held. During the jury charge, the trial judge gave the following definition of conspiracy to commit murder:

> 1.) That the defendant agreed with another person or persons that they or one or more of them would engage in conduct which constitutes the crime of murder; and,
>
> 2.) That the defendant's purpose was to promote murder or facilitate the commission of the crime of murder.

The trial judge explained the jury could not find defendant guilty of conspiracy unless:

> the state has . . . prove[n] beyond a reasonable doubt that when [defendant] agreed, it was his conscious object or purpose to promote it or make it easier to commit the crime of murder. . . . It also makes no difference what the person or persons with whom the defendant actually conspired had in mind, so long as the defendant believed that he was furthering the commission of the crime of murder.

During jury deliberations, the foreperson submitted the following clarification request: "Regarding conspiracy to commit murder, does this include conspiracy when pertaining to someone conspiring to . . . do . . . something else, i.e., conspiring to fight someone and murder is the final outcome?"

In response, the trial judge answered:

> Now, in the charge that you have in the jury room, . . . conspiracy to commit murder, it outlines certain elements. And the elements are—and the state must prove each beyond a reasonable doubt—(1) that the defendant agreed with another person or persons that they or one or more of them would engage in conduct which constitutes the crime of murder; and . . . (2) that the defendant's purpose was to promote or facilitate the commission of the crime of murder.
>
> So, the purpose of the conspiracy is to commit murder. The purpose of the conspiracy, it's insufficient if it's to promote a fistfight. So, the purpose, the object of the conspiracy is to commit murder.
>
> So, for . . . the defendant [] to be found guilty of conspiracy, the conspiracy charged in the indictment which is conspiracy to commit murder, the state has to prove beyond a reasonable doubt that when he agreed, it was his conscious object or purpose to promote or make it easier to commit the crime of murder. <u>And that purpose can evolve during the course of the conspiracy.</u>
>
> Now, in determining what the purpose was, . . . the nature of purpose or knowledge . . . with which defendant acted toward Anthony Flowers is a question of fact for you, the jury, to decide. . . . [P]urpose and knowledge are conditions of the mind which cannot be seen and can only be determined by inferences from conduct, words or acts.
>
> Further on, it is within your power to find that proof of purpose or knowledge has been furnished beyond a reasonable doubt by inferences that may arise from the nature of the acts and the surrounding circumstances. Such things as the place where the acts occurred, the

weapon used, the location, number and nature of wounds inflicted, and all that was done and said by defendant preceding, connected with, and immediately succeeding the events leading to the death of Anthony Flowers are among the circumstances to be considered.

So you may consider any alleged involvement of [defendant] in a preceding fistfight in evaluating the facts and circumstances that you consider as to whether he was a member of a conspiracy to commit murder or that he had the requisite state of mind.

[(Emphasis added).]

Defendant did not object to the trial judge's supplemental instructions. Thereafter, the jury acquitted defendant of the murder and weapons possession charges but found him guilty of conspiracy to commit murder.

On appeal, defendant raises the following issues:

Point I
REVERSAL IS REQUIRED BECAUSE THE TRIAL JUDGE'S ERRONEOUS RESPONSE TO THE JURY'S CONSPIRACY QUESTION WAS LIKELY TO HAVE COMPROMISED THE VERDICT AS TO THAT CHARGE.  (Not Raised Below)

Point II
THE JUDGE'S CHARGE AND RECHARGE ON CONSPIRACY WERE MISLEADING AS TO THE PERMISSIBLE SCOPE OF THE ALLEGED CONSPIRACY, NECESSITATING REVERSAL.

Point III
THE TRIAL JUDGE ERRED IN CONSIDERING FOR SENTENCING PURPOSES DEFENDANT'S 2003

6

CONFESSION TO TWO HOMICIDES DESPITE THE
SUBSEQUENT DISMISSAL OF THOSE CHARGES.

Defendant argues the trial judge's inclusion of the phrase "And that purpose can evolve during the course of the conspiracy" in response to the jury's clarification request was erroneous and necessitates reversal of the jury's verdict. In defendant's view, the jury was confused about whether they could find defendant guilty of conspiracy to commit murder if he had only conspired to engage in a fistfight but murder was the final result. The correct answer was "no," which was how the trial judge initially responded. But, by seemingly using the word "purpose" to refer to both the mental state defendant must have acted with as well as the object of the conspiracy, defendant contends the trial judge instructed the jury that the object of the conspiracy could "evolve" without a contemporaneous finding of agreement among the co-conspirators. While we cannot be sure how the jury interpreted the trial judge's supplemental instruction, the risk that the jury convicted defendant of conspiracy to commit murder when they only believed he conspired to instigate a fistfight is far too great to ignore. For that reason, we reverse defendant's conviction and remand this case for a new trial.

"[A]ppropriate and proper charges are essential for a fair trial." State v. Baum, 224 N.J. 147, 158-59 (2016) (quoting State v. Reddish, 181 N.J. 553, 613

7

(2004)).  "The trial court must give 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'"  Id. at 159 (quoting State v. Green, 86 N.J. 281, 287-88 (1981)).  "Thus, the court has an 'independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party.'"  Ibid. (quoting Reddish, 181 N.J. at 613).  "Because proper jury instructions are essential to a fair trial, 'erroneous instructions on material points are presumed to' possess the capacity to unfairly prejudice the defendant."  Ibid. (quoting State v. Bunch, 180 N.J. 534, 541-42 (2004)).  Therefore, "[e]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error."  State v. Afanador, 151 N.J. 41, 54 (1997) (citation omitted).

"The standard for assessing the soundness of a jury instruction is 'how and in what sense, under the evidence before them, and the circumstances of the trial, would ordinary . . . jurors understand the instructions as a whole.'"  State v. Savage, 172 N.J. 374, 387 (2002) (quoting Crego v. Carp, 295 N.J. Super. 565, 573 (App. Div. 1996)).  "When a jury requests clarification, the trial judge is obligated to clear the confusion."  State v. Conway, 193 N.J. Super. 133, 157

(App. Div. 1984) (citing United States v. McCall, 592 F.2d 1066, 1068 (9th Cir. 1979)). "So, too, when the jury's question is ambiguous, the judge is obliged to clear the confusion by asking the jury the meaning of its request." State v. Graham, 285 N.J. Super. 337, 342 (App. Div. 1995). Indeed,

> [a] question from a jury during its deliberations means that one or more jurors need help and that the matter is of sufficient importance that the jury is unable to continue its deliberations until the judge furnishes that help. An appropriate judicial response requires the judge to read the question with care to determine precisely what help is needed.
>
> [State v. Parsons, 270 N.J. Super. 213, 221 (App. Div. 1994).]

The Parsons court further explained:

> Jury questions present a glimpse into a jury's deliberative process. If a question discloses that the jury needs specific help in understanding issues it must decide, particularly issues related to the elements of the crime charged, and that help is not given, we will not speculate as to whether the verdict would have been different or the same had the help been given.
>
> [Id. at 224.]

In a case where, as here, the State argues that the error is harmless because the trial judge correctly instructed the jury in other components of the charge, "[t]he test to be applied . . . is whether the charge as a whole is misleading, or sets forth accurately and fairly the controlling principles of law." State v.

9

<u>Jackmon</u>, 305 N.J. Super. 274, 299 (App. Div. 1997) (alteration in original) (quoting <u>State v. Sette</u>, 259 N.J. Super. 156, 190-91 (App. Div. 1992)).  A jury "charge must be read as a whole in determining whether there was any error." <u>State v. Torres</u>, 183 N.J. 554, 564 (2005).  Moreover, the effect of any error must be considered "in light 'of the overall strength of the State's case.'"  <u>State v. Walker</u>, 203 N.J. 73, 90 (2010) (quoting <u>State v. Chapland</u>, 187 N.J. 275, 289 (2006)).

When a defendant does not object to perceived error in the jury charge, we review for plain error.  <u>State v. Funderburg</u>, 225 N.J. 66, 79 (2016).  "Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'"  <u>Ibid.</u> (quoting <u>R.</u> 2:10-2).  "Without an objection at the time a jury instruction is given, 'there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case.'"  <u>State v. Montalvo</u>, 229 N.J. 300, 320 (2017) (quoting <u>State v. Singleton</u>, 211 N.J. 157, 182 (2012)).  Plain error, in the context of an allegedly improper jury charge, "requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the

court that of itself the error possessed a clear capacity to bring about an unjust result.'" Id. at 321 (quoting Chapland, 187 N.J. at 289).

An "agreement to commit a specific crime is at the heart" of the conspiracy statute. State v. Samuels, 189 N.J. 236, 245 (2007). A conspiracy requires an "actual agreement [with another] for the commission of the substantive crime[.]" State v. Kamienski, 254 N.J. Super. 75, 93 (App. Div. 1992). "[M]ere knowledge, acquiescence, or approval of the substantive offense, without an agreement to cooperate, is not enough to establish one as a participant in a conspiracy." State v. Abrams, 256 N.J. Super. 390, 401 (App. Div. 1992). Rather, the State must prove the defendant either agreed with another to engage in criminal conduct or agreed to aid the other in planning or committing the crime. N.J.S.A. 2C:5-2(a); see State v. Ball, 141 N.J. 142, 178 (1995) ("A conspiracy conviction does not turn on 'doing the act, nor effecting the purpose for which the conspiracy is formed, nor in attempting to do them, nor in inciting others to do them, but in the forming of the scheme or agreement[.]'" (quoting State v. Carbone, 10 N.J. 329, 337 (1952))). To be guilty of conspiracy, the defendant must have acted with purpose, i.e., it was his or her "conscious object to engage in conduct of that nature or cause such a result" or if he or she was "aware of the existence of such circumstances or he [or] she believes or hopes

that they exist." Model Jury Charges (Criminal), "Conspiracy (N.J.S.A. 2C:5-2)" (rev. Apr. 12, 2010).

When giving a conspiracy instruction, the trial judge must not conflate the conspiracy's purpose, i.e., its objective, with the mens rea necessary to consummate the conspiracy. The model jury instructions for conspiracy make this necessary distinction by using the phrase "conspired to commit the crime" when describing the conspiracy's aim and only using purpose to refer to the defendant's mental state. Ibid. Here, the trial judge followed the model jury instructions in providing the initial conspiracy instruction; however, his deviation from the model instructions in response to the jury's question resulted in plain error.

The jury's question was, essentially, if defendant conspired to instigate a fistfight, and a death resulted, was that a sufficient basis to find conspiracy to commit murder? As a matter of law, the answer to the question is "no." A conspiracy is complete the moment the parties agree to "engage in conduct which constitutes [a] crime," N.J.S.A. 2C:5-2(a)(1). Thus, by definition, the object of the conspiracy cannot change once agreed upon unless there is evidence the members of the conspiracy agreed to commit a new crime and acted with purpose to promote or facilitate the new crime.

Initially, the trial judge correctly answered the question, saying, "So, the purpose of the conspiracy is to commit murder. . . . [I]t's insufficient if it's to promote a fistfight. So, the purpose, the object of the conspiracy is to commit murder." But, he continued, "the [S]tate has to prove beyond a reasonable doubt that when he agreed, it was his conscious object or purpose to promote or make it easier to commit the crime of murder. And that purpose can evolve during the course of the conspiracy."

Although we cannot know how the jury interpreted the trial judge's answer, the jury could well have understood that a conspiracy's aim could evolve without corresponding proof the parties agreed to carry out the new crime. In other words, the jury could have found defendant only conspired to instigate a fistfight but found him guilty of conspiracy to commit murder without finding defendant agreed to commit murder and it was his conscious object to promote or facilitate the murder.

We recognize that the phrase at issue was but one vague or incorrect statement in an otherwise correct jury instruction. However, we cannot ignore the possibility that the jury convicted defendant of conspiracy upon an invalid understanding of the law. See Montalvo, 229 N.J. at 324 ("Here, because the jury instructions permitted the jurors to convict [the defendant] either upon a

13

valid theory of guilt . . . or upon an invalid theory . . . and because we cannot know upon which theory the jury found [the defendant] guilty, we find that the jury instructions were clearly capable of producing an unjust result.").  For that reason, we reverse defendant's conviction and remand the matter for a new trial. It is unnecessary to address defendant's remaining arguments.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2225-17T1