254 N.J. Super. 541 (1992)
604 A.2d 131
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BENNIE EUGENE BRIDGES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1992.
Decided February 28, 1992.
*543 Before Judges PRESSLER, SHEBELL and SKILLMAN.
Stephen W. Kirsch, Assistant Deputy Public Defender, argued the cause for appellant (Wilfredo Caraballo, Public Defender).
Robert E. Bonpietro, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
N.J.S.A. 2C:2-6 defines the circumstances under which one can be held legally accountable for the criminal conduct of another. The culpability requirement for liability as an accomplice pursuant to N.J.S.A. 2C:2-6b(3) has received significant attention from the Supreme Court since enactment of the New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 et seq., in 1978. See State v. Weeks, 107 N.J. 396, 526 A.2d 1077 (1987). Vicarious liability as a conspirator pursuant to N.J.S.A. 2C:2-6b(4) has, however, received little attention from the courts. This appeal requires us to address the culpability requirement necessary to sustain a conviction of a conspirator for the substantive crime committed by a co-conspirator.
We conclude that the culpability requirement for vicarious conspirator liability is the same as for accomplice liability. Consequently we hold that a conspirator can be held accountable only for those substantive crimes committed by co-conspirators as to which the conspirator had the same intent and *544 purpose as the co-conspirator who actually committed them.[1] Thus, if the culpability element of the substantive crime is knowing or purposeful action as defined by N.J.S.A. 2C:2-2b(1) and (2), imposition of vicarious liability requires the conspirator to have had the same state of mind in respect of that crime as the co-conspirator who actually committed it. If, however, the culpability element of the substantive crime is recklessness as defined by N.J.S.A. 2C:2-2b(3), imposition of vicarious liability requires that the conspirator both intended that the co-conspirator commit the conduct resulting in that substantive crime and also that he consciously disregarded a substantial, unjustifiable and understood risk, as that term is defined by the statute, that that crime would ensue from that conduct.
This appeal arises out of the indictment and conviction of defendant Bennie Bridges of a charge of conspiracy to commit the second-degree crime of possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4a; the third-degree crime of possession of a handgun without a permit, N.J.S.A. 2C:39-5b; and the fourth-degree crime of pointing a firearm in the direction of another under circumstances manifesting extreme indifference to human life, N.J.S.A. 2C:12-1b(4). In addition, defendant was charged with liability, "pursuant" to that conspiracy, for nine substantive crimes including one count of purposeful or knowing murder, N.J.S.A. 2C:11-3a(1) or (2); one count of aggravated manslaughter, N.J.S.A. 2C:11-4a; one count of aggravated assault with a firearm, N.J.S.A. 2C:12-1b(2); one count of aggravated assault by pointing a firearm, N.J.S.A. 2C:12-1b(4); two counts of possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4a; two counts of possession of a handgun without a permit, N.J.S.A. 2C:39-5b; and one count of possessing a defaced firearm, N.J.S.A. 2C:39-3d. The jury found defendant guilty of the purposeful or knowing *545 murder and hence, following the judge's instruction, did not consider the lesser-included separately charged count of aggravated manslaughter. It also found him guilty of all the other charges except the defaced-handgun charge, of which he was acquitted. The judge merged the conspiracy, fourth-degree aggravated assault, and second-degree weapons charges into the murder, on which he sentenced defendant to a term of life imprisonment subject to a thirty year parole ineligibility term. He also sentenced defendant to a consecutive term of four years subject to a three year parole ineligibility term on the aggravated assault conviction and merged the remaining two weapons offenses on which he imposed a concurrent four year term.
We are satisfied from our review of this record that there was insufficient evidence to convict defendant of purposeful or knowing murder. He was accordingly entitled to the grant of his motion for acquittal of that charge, and we reverse the conviction on that charge. We are also satisfied that the remaining convictions of substantive offenses must be reversed and remanded for trial because of the failure of the charge properly to define the state of mind of a conspirator requisite for conviction. We affirm, however, the conspiracy conviction.

I
The tragic episode which constitutes the gravamen of the charges brought against defendant occurred during the early morning hours of Saturday, September 3, 1988, in the Roebling section of Florence Township, at a party at the home of C.S. which was being held to celebrate her sixteenth birthday. The testimony of a group of youngsters who were at the party and of the investigating officers, together with defendant's recorded statement which was placed in evidence, permits a clear reconstruction of the events of that night. C.S. had invited about twenty young people, mostly between the ages of 16 and 19, to the party, telling them, however, that they should invite *546 other mutual friends as well. In all about sixty or seventy young people were gathered, most of them in the basement of the house and most of them from the Florence Township area of Burlington County. Defendant, then 20 and acquainted with C.S., heard of the party and stopped by. At some time shortly after midnight, he had an argument with another guest, Andy Strickland. He believed that Strickland had insulted him and felt he was being treated as an outsider since he was from Trenton and the others were from Burlington. In any event, he left the party, saying he was going to get his "boys."
Defendant did then return from Roebling to Trenton in order to find two close friends of his to bring back to the party with him. He was stopped twice on this trip by police officers because his car was missing a headlight. He told both of them that he was on his way to Trenton to pick up friends and would then return to Roebling. When he reached Trenton, defendant was unable to find the two friends he was seeking, but met two other friends, codefendants Eddie Rolle and Keith Bing. Rolle and Bing agreed to go back to the party with him to back him up in his dispute with Strickland. They first had to stop at Bing's home to drop off Bing's car and both Bing and Rolle made a quick stop inside. When the three started back to Roebling in defendant's car, Bing and Rolle told him that they were armed with guns. Defendant's response, he says, was "Man, don't shoot nobody.... Don't shoot anybody at the party, man."
The three arrived back at the party at about 2:00 a.m., parked around the corner from C.S.'s house and went down to the basement. Defendant's evident plan was to have a one-on-one fight with Strickland. Strickland, however, was apparently considerably smaller than defendant, and it was agreed that Strickland's friend, John Rasberry, known as Raz, would fight defendant instead. Defendant and Raz left the basement to conduct their fight in the middle of the street and the remaining guests came out to watch. There was evident concern on the part of the defendant and his friends because they were grossly *547 outnumbered by the large group of Raz's sympathizers. Various comments were made by the bystanders about the fight being a fair one-on-one affair. Indeed one of the guests, a State's witness, recalled Bing saying, "Nobody jump in," which he construed to mean that Bing wanted the two combatants left alone to fight their own fight.
The fight began with the guests ranged in a semi-circle around defendant and Raz. Bing and Rolle were off to one side, Bing leaning against a car. After several blows, defendant and Raz both fell to the ground, wrestling with each other. At that point two things happened. One of the guests tried to pull defendant, who was on top of Raz, away from Raz. Another guest punched Bing, who started to slide down against the car. Bing then apparently reached for his gun. Rolle also pulled out his gun and fired one shot into the air. The crowd of youngsters began to disperse when the shot was fired. Some of them, however, called out that it was only a cap gun, and the crowd began to reassemble. As they did so, Rolle began shooting into the crowd. One bullet hit and killed a fifteen year old boy, Shawn Lockley. Another bullet hit another guest, Paul Suszynski, in the shoulder. Suszynski was taken to the hospital, the bullet removed, and his recovery was uneventful.
After the shooting, defendant, Bing and Rolle ran away. They hid the two weapons, later recovered by police, and were helped by friends to leave the State. Bing and Rolle went to Florida, and defendant stayed first in Atlanta and then with a cousin in North Carolina. All were eventually apprehended, defendant as a result of a speeding stop in North Carolina. A single indictment was returned against the three charging each of them in all ten counts. Defendant's trial was severed from his codefendants'.
As we have noted, but for the conspiracy count, which charged a conspiracy to commit the two weapons crimes and the fourth-degree aggravated assault based on pointing a firearm,[2] *548 all of the substantive offenses were charged and tried on the theory of vicarious conspirator liability even though most of them were not included in the conspiracy count as having been within the scope of the conspiracy. Accomplice liability was not charged against any of the three defendants in respect of any of the substantive offenses.
As to the nine substantive offenses, the jury was instructed, in essence, that it could find defendant guilty of each of the substantive offenses if it found that the offense had been committed by any one of the conspirators, if there was in fact a conspiracy in which defendant had participated, and if the substantive crime, even if not a direct object of the conspiracy, was, nevertheless, a "natural and probable consequence" of the conspiracy. As to each of the substantive crimes, the only state of mind which the jury was asked to consider was the state of mind of the co-conspirator who actually committed the crime. Defendant's own state of mind vis-a-vis these substantive crimes was never addressed. This was critical error.

II
Before considering the culpability requirements for vicarious conspirator liability under the Code, we first address pre-Code vicarious liability since we are satisfied that even if its elements were not modified by the Code, there was insufficient evidence to permit the jury to find defendant guilty of knowing or purposeful murder.
To begin with, vicarious liability was not part of the codified criminal law in this jurisdiction until the adoption by L. 1951, c. *549 344 of Title 2A, revising former Title 2. Prior to that time vicarious liability was recognized by our criminal jurisprudence as a matter of the common-law doctrine that one who aids, abets or assists the criminal actor is responsible for those acts under principles of agency which make the agent equally liable with the principal. See, e.g., State v. Morano, 134 N.J.L. 295, 301, 47 A.2d 419 (E. & A. 1946). Thus, as pointed out by the Supreme Court in State v. Cooper, 10 N.J. 532, 568, 92 A.2d 786 (1952), "[t]he distinction between principal and accomplice or aider and abettor has been abolished in our jurisdiction for purposes of indictment and punishment."
The common-law vicarious liability of each conspirator for crimes within the scope of the conspiracy committed by any of them was simply a variation on the principal-agent theme. That is to say, in a principal-accomplice relationship, one is the principal and one the agent. In a conspiracy relationship each conspirator is both the principal and agent of every other conspirator. As articulated by the Supreme Court in State v. Carbone, 10 N.J. 329, 339-340, 91 A.2d 571 (1952):
Where two or more persons have entered into a conspiracy to perpetrate a crime, the acts and declarations of one of the conspirators in furtherance of the common object are deemed in law the acts and declarations of all. This on the theory of a joint or mutual agency ad hoc for the prosecution of the common plan ... This is the rule in New Jersey, and it is the general rule.... The acts and declarations of an agent, within the scope of his authority, are considered and treated as the acts and declarations of his principal. [Citations omitted]
The concept of mutual agency was again underscored by State v. Cooper, supra, 10 N.J. at 568, 92 A.2d 786, which applied the common-law abolition of "the distinction between principal and accomplice or aider and abettor" to conspirators because "[u]nder our law, all those who conspire to commit a crime and participate in some way in its commission are joint principals and each is as guilty as the person who actually commits the crime."
The enactment of Title 2A included N.J.S.A. 2A:85-14, which had no earlier source. Encaptioned Aiders and abettors: principals, it provided in full that:

*550 Any person who aids, abets, counsels, commands, induces or procures another to commit a crime is punishable as a principal.
Any person who wilfully causes another to commit a crime is punishable as a principal.
No separate statute was adopted establishing the vicarious liability of conspirators, and we are satisfied that this was so because the "aiding and abetting" statute, based on the common-law principal-agent relationship, was evidently regarded as broad enough to include conspirators. Thus, in Cooper, supra, 10 N.J. at 568, 92 A.2d 786, decided shortly after the January 1, 1952, effective date of Title 2A, the Court noted that co-conspirators "are indicted, in the language of the statute, as principals and are not accused of being accessories or aiders and abettors." And the Court specifically held in State v. Madden, 61 N.J. 377, 393, 294 A.2d 609 (1972), that a conspirator may be found guilty of the ensuing substantive crime under the aiding or abetting statute, since:
When the commission of the substantive crime is specifically agreed upon as the object of the conspiracy, it can readily be found that everyone who agreed upon the commission of the crime did thereby in fact aid or abet or counsel or induce or procure the actual perpetrator to commit that crime.
....
A conspirator who is thus chargeable with the substantive crime under our aiding or abetting statute is a principal, and on the trial of that charge, the fact of the conspiracy may be proved even though the indictment does not also charge the crime of conspiracy or allege the fact of a conspiracy. [Citations omitted]
See also State v. Murphy, 168 N.J. Super. 214, 218-219, 402 A.2d 944 (App.Div.), certif. denied, 82 N.J. 264, 412 A.2d 771 (1979); State v. Loughrey, 149 N.J. Super. 264, 267-268, 373 A.2d 703 (App.Div. 1977).
The point of this historical foray is to demonstrate, as we believe it does, that under the pre-Code law in this State, the liability of both accomplice and conspirator for a crime actually committed by another derived from the same principles, was addressed by the same statute, and was based on the same degree and nature of individual culpability. Indeed, the primary *551 distinction between accomplice and conspirator lay not in their vicarious liability for the substantive crime but in their pre-crime vulnerability, that is, an accomplice had no criminal liability at all unless the crime was actually attempted or completed by his alleged principal. See State v. Marshall, 97 N.J.L. 10, 116 A. 691 (Sup.Ct. 1922). Compare State v. Cooper, supra, 10 N.J. at 567-568, 92 A.2d 786 (Marshall rule does not apply where all are charged as principals as well as accomplices). A conspirator, on the other hand, was criminally liable for entering into the conspiracy whether or not the crime which was the object of the conspiracy was ever executed.
Merely to say that one may be vicariously liable for the criminal conduct of another which he in some way advances or promotes does not, however, define the culpability element of that liability. That question was answered in respect of accomplice liability by State v. Fair, 45 N.J. 77, 95, 211 A.2d 359 (1965), which explained that:
To render both defendants guilty it is essential that they shared in the intent which is the crime's basic element, and at least indirectly participated in the commission of the criminal act.
....
While each participant may be guilty "as a principal," N.J.S.A. 2A:85-14, he is not necessarily guilty in the same degree. If both parties enter into the commission of a crime with the same intent and purpose each is guilty to the same degree; but each may participate in the criminal act with a different intent. Each defendant may thus be guilty of a higher or lower degree of crime than the other, the degree of guilt depending entirely upon his own actions, intent and state of mind. [citations omitted]
See also State v. Sullivan, 43 N.J. 209, 237, 203 A.2d 177 (1964), cert. denied, 382 U.S. 990, 86 S.Ct. 564, 15 L.Ed.2d 477 (1966) (approving the trial judge's aiding and abetting charge that "a person cannot be an active partner in the intent which is the crime's basic element without actual knowledge of the planned criminal activity. There can be no criminal responsibility without that knowledge and the necessary community of purpose"); State v. Madden, supra, 61 N.J. 377, 396-397, 294 A.2d 609 ("one cannot be held as an aider or abettor unless it is *552 found that he shared the same intent required to be proved against the actual perpetrator"); State v. Sims, 140 N.J. Super. 164, 174-175, 355 A.2d 695 (App.Div. 1976) (where the charge fails to instruct the jury that the aider or abettor must possess the same intent as the perpetrator, it is reversibly defective since the jury must be told it "must find a community of purpose between the actual perpetrator and the aider and abettor").
The vicarious liability of a conspirator for a substantive crime committed by a co-conspirator is not conceptually different. Certainly by definition, each conspirator shares the intent and purpose that the crime which is the object of the conspiracy be committed. Proof of the conspiracy comprehends, therefore, proof of the shared intent, mutual design and community of purpose which is essential to accomplice liability. The language of the leading pre-Code conspiracy cases so suggests. Thus Carbone, supra, 10 N.J. at 339, 91 A.2d 571, speaks in terms of the "furtherance of the common object." Cooper, supra, 10 N.J. at 568, 92 A.2d 786, speaks in terms of those who conspire to commit a crime being as guilty as the one who actually commits that crime. Madden, supra, 61 N.J. at 394, 294 A.2d 609, speaks of "an actual agreement for the commission of the substantive crime" resulting in "common liability of all with respect to the ensuing substantive offense." To this point then, we are convinced that there was congruency between the state-of-mind elements of accomplice liability and vicarious conspirator liability. In both cases vicarious liability required first that the defendant did something material to further the commission of the crime by another and second, that he intended that that crime be committed.
What then of vicarious conspirator liability for substantive crimes committed by a co-conspirator which are not within the agreed common purpose and are not its understood and agreed-upon objectives, but which ensue as a result of the execution by the co-conspirator of the conspiratorial plan? This was the question before the Court in State v. Stein, 70 N.J. 369, 387, *553 360 A.2d 347 (1976), which phrased the issue as determination of "the liability of a conspirator for an act consequential to but not specifically the subject of the conspiracy ..." and referred to it as "a matter of considerable debate and controversy."
In Stein the object of the conspiracy was the breaking and entering of a home for the purpose of stealing the large amounts of cash believed to be kept there. The crime was proposed by defendant Stein to two persons, Testa and Stasio, who were to commit it. Testa and Stasio in fact committed the crime about a year later. After gaining admittance to the house by deception, they used handguns to threaten the occupants, Dr. and Mrs. Gordon, bound them, and when the police arrived on a summons from the maid, took Mrs. Gordon and her 14-year old daughter from the house at gunpoint to facilitate their escape. A high speed auto chase ensued which ended when the getaway car crashed into a police car barrier, seriously injuring two police officers. While Stein was clearly vicariously liable for the burglary and theft which had been the object of the conspiracy, the question was which, if any, of the ensuing crimes he could also be held vicariously liable for as a conspirator. The Court concluded that he could be held liable for the armed robbery of Dr. Gordon and the initial assault on Mrs. Gordon since these were natural and probable consequences of the conspiracy, but not for the remaining crimes, including the kidnapping. Its ratio decidendi was that "it would be unreasonable for a fact-finder to find as a fact beyond a reasonable doubt that ... [these crimes] were necessary, natural or probable consequences of the conspiracy, having in mind the unique fact-complex presented." Stein, supra, 70 N.J. at 390, 360 A.2d 347.
In reaching this conclusion the Court relied on Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1945), and particularly the dictum of Justice Douglas that vicarious liability extends to substantive acts which could "be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." In Pinkerton, the United States *554 Supreme Court enunciated the vicarious rule of conspirator liability for federal crimes, there violations of the Internal Revenue Code. This is its full statement:
It is settled that "an overt act of one partner may be the act of all without any new agreement specifically directed to that act." ... Motive or intent may be proved by the acts or declarations of some of the conspirators in furtherance of the common objective.... The governing principle is the same when the substantive offense is committed by one of the conspirators in furtherance of the unlawful project.... The criminal intent to do the act is established by the formation of the conspiracy. Each conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for the purpose. The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all. An overt act is an essential ingredient of the crime of conspiracy under 18 U.S.C.A. § 88.... If that can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense.
A different case would arise if the substantive offense committed by one of the conspirators was not in fact done in furtherance of the conspiracy, did not fall within the scope of the unlawful project or was merely a part of the ramification of the plan which could not be reasonably foreseen as a necessary or natural consequences of the unlawful agreement. But as we read this record, that is not this case. [Id., 328 U.S. at 646-48, 66 S.Ct. at 1184, 90 L.Ed. at 1496-97.] [Citations omitted]
As we read the full explanation of Pinkerton on which Stein relied, we are convinced that it was not the Court's design to read out of vicarious liability the element of intent vis-a-vis the substantive offense. That is the clear import of the text. It is also the reason why the Court concluded that vicarious liability would not attach to a crime which was "part of the ramification of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement." We understand that formulation to have two elements. Not only must the crime which was not a specific direct object of the conspiracy be "a necessary or natural consequence" of the unlawful agreement in order for vicarious liability to attach but it must also have been foreseen by the conspirator as such, that is, it must have been within his contemplation when he entered *555 into the agreement and reasonably comprehended by his purpose and intention in entering into the agreement. We are aware that Stein refers to "natural or probable consequences" of the conspiracy in defining vicarious accountability of a conspirator. But in view of Stein's source, that is, the explanation of Pinkerton, we are persuaded that that phrase must fairly be read as a shorthand expression for the complete statement of the principle, namely, that the substantive crime must have been a necessary or natural consequence of the agreement which was reasonably foreseen as such by the conspirator.
As so read, we think it plain that this defendant could not, on this record, be held chargeable for a knowing or purposeful murder. At most, the object of the conspiracy, as charged and proved, was for Bing and Rolle to use handguns, if necessary, to intimidate the party guests in order to prevent them from interfering in defendant's fight with Raz. That intimidation was the fourth-degree aggravated assault defined by N.J.S.A. 2C:12-1b(4), namely, "knowingly under circumstances manifesting extreme indifference to the value of human life" pointing a firearm "at or in the direction of another...." It may well have been within defendant's contemplation  it may well have been foreseen by him  that in the course of that reckless pointing, the trigger would also be recklessly pulled by another and people might be recklessly killed or injured. Thus under the Stein/Pinkerton formulation, defendant might be vicariously liable for a manslaughter or assault offense based on Bing's or Rolle's foreseeable recklessness in the circumstances which the conspiracy was intended to bring about. But, clearly, the record does not support the inference, beyond a reasonable doubt, that defendant did foresee or should have foreseen that either Bing or Rolle would either purposely or knowingly cause death or serious bodily injury. Such a consequence was not reasonably within his contemplation. Stated another way, even if a reckless killing or reckless assault were within the parameters of this conspiracy, purposeful or knowing *556 murder was not. It was too remote from the original conspiratorial purpose, intent and agreement. Compare State v. Fornino, 223 N.J. Super. 531, 539 A.2d 301 (App.Div.), certif. denied, 111 N.J. 570, 546 A.2d 499 (1988). And see N.J.S.A. 2C:2-3b.
For these reasons we are satisfied that defendant's motion for acquittal of the charge of vicarious liability for purposeful or knowing murder was required to have been granted even if Stein were still the law. If Stein were still the law, the proofs could well support a finding of defendant's vicarious liability for manslaughter under N.J.S.A. 2C:11-4a or -4b, for aggravated assault under N.J.S.A. 2C:12-1b, and for the weapons charges. But the jury never considered the manslaughter charge. Moreover the jury instruction on all of the substantive charges was fatally defective first, because of its exclusive focus on the state of mind of Bing and Rolle in committing each of the crimes rather than on defendant's state of mind in entering into the conspiracy and second, because of its failure adequately to define the scope of such crimes as may be found to be within the conspiratorial purpose and plan.

III
Whether defendant is subject to retrial for manslaughter and assault as well as for the weapons offenses and, if so, the definition of the culpability requirement for vicarious liability, depends on a construction of the present criminal Code.
We begin that analysis with the Code provision defining conspiracy. In respect of conspiracies whose object was the commission of a crime, the pre-Code law included both common-law conspiracy and the simple statement of N.J.S.A. 2A:98-1a that "[a]ny two or more persons who conspire ... [t]o commit a crime" are guilty of conspiracy.[3] In keeping with the Code's *557 overall design of specifically delineating each of the elements of each crime, including each criminal actor's required degree of culpability therefor, N.J.S.A. 2C:5-2a defines the crime of conspiracy as follows:
A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:
(1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
(2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
As noted by the New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission, Vol. II (1971) (Final Report), this definition effects several significant changes and clarifications in prior law which are relevant here. First, the Code adopts the so-called unilateral approach by directing attention "to each individual's culpability by framing the definition in terms of the conduct which suffices to establish the liability of any given actor, rather than the conduct of a group of which he is charged to be a part...." Id. at 131. See also Cannel, Criminal Code Annotated, Comment N.J.S.A. 2C:5-2. Second, the Code prescribes a culpability standard for the crime of conspiracy, namely the "purpose of promoting or facilitating" the commission of a crime. Thus irrespective of the culpability standard constituting the crime which is the object of the conspiracy, an actor cannot be chargeable with the crime of conspiracy unless he has demonstrated the necessary state of mind in entering into the agreement, namely an intention to promote or facilitate specified criminal conduct. Final Report at 133-34. Third, with respect to the object of the conspiracy, the clear implication of the Code formulation is that the identification of the specific crime or crimes which are the *558 object of the conspiracy is a requisite element of the crime of conspiracy.
N.J.S.A. 2C:5-2 is silent as to the vicarious liability of a conspirator for the criminal acts of co-conspirators. The subject of vicarious liability is addressed by N.J.S.A. 2C:2-6b. As originally drafted, and following § 2.06 of the Model Penal Code, this section of the Code did not provide for the vicarious liability of a conspirator. Its three subsections rendered a person "legally accountable for the conduct of another" when:
(1) Acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;
(2) He is made accountable for the conduct of such other person by the code or by the law defining the offense;
(3) He is an accomplice of such other person in the commission of an offense;
Accomplice liability is further defined by N.J.S.A. 2C:2-6c, which provides in part that a "person is an accomplice of another person in the commission of an offense" if:
(1) With the purpose of promoting or facilitating the commission of the offense; he
(a) Solicits such other person to commit it;
(b) Aids or agrees or attempts to aid such other person in planning or committing it; or
(c) Having a legal duty to prevent the commission of the offense, fails to make proper effort so to do; or
(2) His conduct is expressly declared by law to establish his complicity.
It is immediately apparent that the culpability requirement for liability as an accomplice is identical to the culpability requirement for conspiracy under N.J.S.A. 2C:5-2, namely, "the purpose of promoting or facilitating" a specific crime. The congruency does not end there. One is liable as an accomplice if, with that requisite state of mind, he either "aids or agrees or attempts to aid" or "solicits" another to plan or commit the crime. One is guilty of conspiracy, if with the same state of mind, he agrees with another that they or one of them will "commit, attempt to commit or solicit the commission of that crime" or agrees to aid another in the "planning or commission of such crime or of an attempt or solicitation to commit such *559 crime." The only significant difference is that in a conspiracy, the accomplice may also agree that he will be the actual perpetrator of the crime.
The degree of Code congruency between accomplice liability and conspiracy is indeed so close that the Final Report, in discussing the general purpose of N.J.S.A. 2C:2-6, points out that:
... insofar as a determination [of vicarious liability] rests upon general principles of liability, those principles are here set forth. The main areas of existing law thus covered are those in which criminal liability rests on the behavior of an innocent or irresponsible agent, joint criminality or accessorial participation through aiding, abetting and conspiracy. [Id. at 55-56] [Emphasis added]
The Final Report also makes this instructive comment respecting the decision to include vicarious conspirator liability within the definition of accomplice liability rather than separately to provide for it:
The Code diverges from the language of the New Jersey cases, although not from the language of the New Jersey statute, in that it does not make "conspiracy" alone a basis for complicity in substantive offenses committed in furtherance of its aims. It asks instead the more specific question of whether the defendant commanded, encouraged, aided or agreed to aid in the commission of the crime charged. The reason given for this treatment is that there appears to be no other or no better way to confine within reasonable limits the scope of liability to which conspiracy may theoretically give rise. Specifically, finding liability for each of the substantive offenses (in addition to liability for the conspiracy and any substantive offenses which can be "brought home" to the particular defendant) in sprawling conspiracies should be prohibited. According to the drafters of the MPC, no cases actually press the liability for substantive crimes arising out of conspiracies as far as the existing rule would theoretically allow and the cases which declare the doctrine normally involve defendants who had a hand in planning or committing the crime. MPC T.D. 1, p. 22 (1953). The New Jersey cases, while speaking in terms of "conspiracy", do so in cases where the Code would clearly find liability. State v. Cooper, supra [10 N.J.] at 568 [92 A.2d 786] ("All those who conspire to commit a crime and participate some way in its commission are joint principals.") ... It should be remembered, that conspiracy is evidentially important and may, evidentially, be sufficient to prove command, encouragement, agreement to assist, assistance, etc. The Code's position is that the jury should not be told that it establishes complicity as a matter of law. [Id. at 58] [citations omitted]
Plainly then, under the Code as originally drafted and as a matter of pre-Stein, pre-Code law, the culpability element of vicarious conspirator liability for a completed crime was identical *560 to that required for accomplice liability. Consequently, one could not be vicariously liable as a conspirator for a completed crime unless he could also be guilty of that crime as an accomplice.
The Code as adopted, however, did make express separate reference to vicarious conspirator liability by adding N.J.S.A. 2C:2-6b(4). That subsection provides that a person is legally accountable for the conduct of another if "[h]e is engaged in a conspiracy with such other person." The threshold question before us is whether the addition of this provision was, as the State urges, intended to codify Stein, or, as the defense urges, was merely technical in nature unintended by the Legislature to effect any substantial change in the original Code draft. Although legislative history is sparse, such as we have been able to uncover, considered in the light of the purpose and philosophy of the Code, leads us to conclude that the defense assertion is correct.
Of prime significance is the fact that N.J.S.A. 2C:2-6b(4) came into the text of the Code in 1974, two years before Stein and hence at a time when case law in this jurisdiction had not yet expressly extended vicarious conspirator liability beyond the direct object of the conspiracy.[4] Moreover, that 1974 draft *561 of proposed Chapter 2 of the Code, while it notes other sections thereof to which substantive changes were being made, including N.J.S.A. 2C:2-11 (de minimis infractions) and 2C:2-12 (entrapment), does not so note in respect of N.J.S.A. 2C:2-6.[5] There are no other legislative materials we have been able to discover which add any elucidation.
Since we must perforce reject the notion that subsection b(4) was intended to codify Stein and since nothing else in the legislative history suggests that a change of significance in the provisions of the 1971 draft respecting vicarious liability was being proposed, we are satisfied that the insertion of that subsection was for technical reasons only. For example it may well have been believed by the Commission's technical staff that it would be useful, as a matter of symmetry, to collect in N.J.S.A. 2C:2-6 all bases of vicarious liability simply to forestall, in view of the abolition of common-law crime, N.J.S.A. 2C:1-5, any later argument that the Code did not provide at all for vicarious conspirator liability despite the breadth of the accomplice liability definition. In any event, whatever the reason may have been, we cannot, in these circumstances, ascribe a legislative motive which would appreciably undercut the careful construction of N.J.S.A. 2C:5-2, the identical state of mind element made common to both accomplice liability and conspiracy, and the fundamental emphasis placed by the Code on individual liability based on clearly defined individual culpability standards. See N.J.S.A. 2C:1-2a(6), 2C:2-2b.
*562 We therefore conclude that Stein notwithstanding, there was initially intended and there remains a complete congruity under the Code between accomplice and vicarious conspirator liability.[6] If under all the circumstances, one does not have the state of mind to warrant imposition of accomplice liability, he also cannot be held vicariously accountable as a conspirator.
If the crime to which vicarious liability is asserted to attach is itself based on a culpability element of purposeful or knowing action, definition of the culpability requirement for vicarious liability thereof is relatively straightforward. The requisite state of mind for accomplice liability was carefully delineated by State v. Weeks, 107 N.J. 396, 526 A.2d 1077 (1987). Echoing the holding of State v. Fair, supra, 45 N.J. 77, 211 A.2d 359, and relying on Justice Schreiber's post-Code analysis in State v. White, 98 N.J. 122, 484 A.2d 691 (1984), Weeks holds that in order to convict a defendant as an accomplice to a crime, the jury must "find that the defendant had the purpose to participate *563 in the crime [as] defined in the Code...." 107 N.J. at 403, 526 A.2d 1077. [Emphasis added] He must have had the "conscious object or design of facilitating" that crime. Id. at 404, 526 A.2d 1077. For example a defendant who "signs on," as it were, to facilitate or promote a robbery without a shared purpose or knowledge that weapons will be used cannot be convicted of armed robbery even if a weapon is used by another and even if that other is convicted of armed robbery. Id. In short, the accomplice, in order to be convicted of a crime committed by another, must have a shared intent as to every material element of that crime. We are persuaded by the foregoing analysis that the same is true with respect to vicarious conspirator liability for intent crimes. Thus the defendant in Stein could not have been convicted of armed robbery without a shared intent and purpose that his confederates would use weapons to effect the planned burglary and theft which were the object crimes of the conspiracy. Clearly, the "natural and probable" criminal consequences of a conspiracy may extend beyond the criminal consequences specifically intended by the conspirator in entering into the conspiracy and which constitute the purpose of the conspiracy. But under the Code, it is only the criminal consequences intended by him for which a conspirator may be held vicariously liable.
What then of vicarious liability for a crime whose culpability requirement is not knowing or purposeful action but rather reckless action? If vicarious liability requires the purpose that the crime be committed, but if the crime does not have a purposeful element, can there be vicarious liability at all? The apparent conundrum is how one can intend a reckless act.[7] We *564 are, however, satisfied that that conundrum is semantical rather than substantive. It is, in fact, resolved by the Model Penal Code.
The Model Penal Code's vicarious liability provision, § 2.06, contains this provision:
When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense. [Model Penal Code § 2.06(4)]
Thus, as the Tentative Draft Comment explains:[8]
One who urges a driver to increase his speed stands in the same position as the driver if a homicide or injury occurs, unless of course, the driver had some unshared special knowledge that has bearing on his liability.
Although § 2.06(4) of the Model Penal Code was not expressly included in either the New Jersey Code drafts or in the Code as adopted, its omission is not attributable to rejection of or disagreement with its principle by the New Jersey framers, but rather to their belief in its redundancy. Thus the Final Report explains that:
We have eliminated a provision of the MPC (§ 2.06(4)) providing that complicity in conduct causing a particular criminal result leads to accountability for that result so long as the accomplice has the purpose or the knowledge with respect to the result that is demanded by the definition of the crime. We do not *565 disagree with it but find it unnecessary in that the same result flows from general principles. Our law is in accord. [Id. at 59.]
As we construe § 2.06(4), imposition of vicarious liability for a crime whose culpability requirement is recklessness requires an initial focus on the actor's conduct rather than on the crime itself. As a first condition, the accomplice or conspirator must have intended that the actor's conduct take place, i.e., that the accomplice or conspirator had the purpose of promoting or facilitating the commission of that conduct by the actor and took some step or steps, as stipulated by either N.J.S.A. 2C:2-6b(3) or 2C:5-2 as applicable, in order actually to promote or facilitate that conduct. Once the conduct is committed, the actor's liability therefor will depend on his, the actor's, state of mind. If purposeful or knowing, the actor may be liable for an "intent" crime. If the actor's state of mind was not purposeful or knowing but was rather comprehended by the definition of reckless of N.J.S.A. 2C:2-2b(3)[9] and if the conduct was the cause of the ensuing criminal result within the intendment of N.J.S.A. 2C:2-3c[10], the actor may be liable for a "reckless" crime.
*566 If the actor is liable for a "reckless" crime, vicarious liability for that crime or a lesser-included "reckless" crime may attach to an accomplice or conspirator who purposely promoted or facilitated the actor's conduct; who was aware when he did so, considering the circumstances then known to him, that the criminal result was a substantial and justifiable risk of that conduct; and who nevertheless promoted that conduct in conscious disregard of that risk. If the actor is liable for an "intent" crime, vicarious liability for that crime may only attach to an accomplice or conspirator who shared the intent that that crime be committed. Vicarious liability for a "reckless" crime may also, however, attach when the actor commits an "intent" crime and the accomplice or conspirator did not intend that that crime be committed but nevertheless intended that the actor take a specific action or actions which resulted in the crime. If criminal liability for the criminal result of that conduct can be predicated on a reckless state of mind, an accomplice or co-conspirator can be vicariously liable for that "reckless" crime under the same principles which apply where the actor's culpability is also based on recklessness. This is so even if the actor himself is guilty of an "intent" crime. The point, as stated by Fair, supra, is that each participant in a common plan may participate therein with a different state of mind. The liability of each participant for any ensuing crime is dependent on his own state of mind, not on anyone else's.
We now apply these principles to the case before us. Of the nine substantive crimes with which defendant was charged as a conspirator, he may obviously not be retried on the one weapons charge of which he was acquitted. Nor may he be retried on the knowing or purposeful murder charge since, as we have said, irrespective of what his co-conspirators' state of mind may have been when the shots were fired, a knowing or purposeful murder was not shown by the State ever to have been intended by this defendant. There was no evidence from which the jury could have found that this defendant had the purpose of facilitating or promoting such a crime in entering *567 into this conspiracy or that he intended that such a murder be committed.[11]
Defendant may, however, be retried on the remaining seven charges. As to those having a knowing or purposeful culpability requirement, namely, the weapons charges and the fourth degree aggravated assault, the jury must be charged in accordance with the Weeks principle of shared intent and the 1988 revision of the Model Jury Charge on vicarious liability of a conspirator, which incorporates the Weeks holding. That is, the jury must be instructed that in order to find defendant guilty of any of these crimes, it must find that he had the purpose of promoting or facilitating those crimes, that he shared the intent that those crimes be committed, and that they were committed by one or more of the co-conspirators.
With respect to the remaining charges and irrespective of his co-conspirators' state of mind, defendant may be retried as a vicariously liable conspirator for aggravated manslaughter under N.J.S.A. 2C:11-4a and the lesser-included offense defined by N.J.S.A. 2C:11-4b(1). He may also be so retried for aggravated assault as defined by N.J.S.A. 2C:12-1b(1) to the extent that that crime is based on the reckless conduct of the actor, for aggravated assault as defined by 2C:12-1b(3), and for any lesser assault offense based on reckless conduct as may be supported by the evidence. As to these crimes, the jury must be instructed that in order to find defendant guilty, it must find that when he entered into the conspiracy, his purpose was to promote or facilitate the conduct of his co-conspirators which resulted in those crimes; that he was then aware that death or bodily injury was a substantial and unjustifiable risk of that conduct; that based on the circumstances then known to him, he understood the risk; and that in conscious disregard of that *568 risk, he nevertheless pursued his purpose of promoting or facilitating the conduct.
We emphasize again that in this case, the co-conspirators' conduct which was within defendant's criminal purpose was not the deliberate pulling of the trigger while the gun was pointed at the crowd with the intent that death or serious bodily injury would result. At most it was the pointing of the gun at the crowd in order to intimidate the bystanders so that they would not interfere with defendant's fight with Raz. Defendant's vicarious criminal liability for the ensuing death and injury of two bystanders would require the State to prove and the jury to find that in the circumstances, there was a substantial and unjustifiable risk that the gun would be discharged, causing death or injury; that defendant was aware of that risk based on the circumstances known to him; and that he nevertheless, in conscious disregard of that risk, facilitated or promoted the co-conspirators' carrying of the gun and his projected intimidating use of it in those circumstances. In sum, on the retrial the judge must instruct the jury to determine the nature of the co-conspirators' conduct which was comprehended by this defendant's conspiratorial purpose and then to determine whether the actual death and injury of the victims caused by the co-conspirators were within the risk of that conduct and whether defendant himself understood the nature of the risk and chose to disregard it.
We affirm the conviction of the conspiracy charge. We reverse the conviction of the charge of vicarious liability for knowing or purposeful murder and remand for entry of judgment of acquittal on that charge. We reverse the remaining convictions and remand to the trial court for further proceedings consistent with this opinion.
SHEBELL, J.A.D., dissenting.
I would affirm each of defendant's convictions. The jury was properly charged on the law of conspiratorial responsibility, as *569 articulated in State v. Stein, 70 N.J. 369, 387, 360 A.2d 347 (1976), that a conspirator may be held accountable for those criminal acts of a co-conspirator which are the natural and probable consequence of the conspiracy. There is no requirement under N.J.S.A. 2C:2-6b(4) that the defendant share the same intent as the shooter. That is the important distinction between conspiratorial liability and accomplice liability which the majority now abandons.
The Legislature in 1978 adopted N.J.S.A. 2C:2-6b(4) without imposing any standard contrary to Stein. I cannot presume, as does the majority, that the Legislature was ignorant of a Supreme Court decision handed down in advance of final adoption of the Code. There was sufficient time to have permitted revision if the Legislature did not intend the result that flowed from the drafters' pre-Stein amendment of the Model Penal Code specifically providing that a conspirator shall be legally accountable for the crimes of a co-conspirator. This Court is not authorized to render a nullity the Legislature's express act of establishing vicarious liability for co-conspirators. Nor may this court overturn the holding in Stein. Yet, the majority has sought to accomplish no less than that today.
The holding of the majority also invalidates the jury's specific finding that it was reasonably foreseeable that defendant's co-conspirators, during the planned armed confrontation for the purpose of intimidating a crowd of teenagers at a sweet sixteen party, would point and fire their loaded handguns in the direction of the crowd. I cannot agree with the majority that as a matter of law it "was not reasonably within [defendant's] contemplation" that the co-defendants' use of handguns to intimidate a crowd of party-goers at 2 a.m. from interfering in a fight between defendant and one of the party guests would result in a knowing or purposeful shooting. The acts of the shooters were indeed the natural or probable consequence of defendants' conspiratorial plan. Stein, 70 N.J. at 389, 360 A.2d 347.
*570 Defendant had left the party after an altercation stating that he would return with others. He traveled from Roebling to Trenton, returning to the party two hours later with two armed companions. Defendant knew that the two he brought with him had handguns. In fact, defendant admitted that he believed the guns were necessary as the party-goers outnumbered the three. The jury was not bound to accept defendant's self-serving statement that the guns were only to "intimidate" or that he told the two "If you're gonna shoot, don't shoot at them, shoot in the air...." There were fifty to sixty teenagers at the party, mostly boys, when defendant left the party to get his friends. Defendant insisted on fighting in the street. The crowd that gathered was cautioned by defendant's associates not to "jump in" because "[n]obody here is Superman." This statement was understood to mean that no one could stop their bullets.
The jury's conclusion that it was reasonably foreseeable that one or both of defendant's co-conspirators would fire at the crowd is adequately supported by the record. The majority is, therefore, without authority to substitute its judgment for that of the jury. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964). What the majority concludes as a matter of law on this issue is nothing more than the substitution of its opinion for that of the jury.
All of defendant's remaining contentions are clearly without merit. I would, therefore, affirm defendant's convictions and sentences.
NOTES
[1] We do not, of course, intend to include such crimes as felony murder in which the statutory culpability requirement is strict liability. See N.J.S.A. 2C:11-3a(3).
[2] The alleged overt acts were defendant's solicitation of Bing and Rolle to commit the crimes which were the stated objects of the conspiracy, namely the two weapons charges and the fourth-degree aggravated assault; the procuring by the three or any of them of weapons to be used in the commission of those three crimes; and Bridges' transport of the other two from Trenton to Florence "in order to promote or facilitate the commission of the crimes enumerated herein."
[3] N.J.S.A. 2A:98-1 constituted other stated non-criminal objectives as effecting a criminal conspiracy and that common-law conspiracy was also not limited to criminal objectives. The limitation of criminal conspiracies to objectives which themselves constitute crimes was one of the Code's significant changes. See Final Report, infra, at 129-130.
[4] A search of the rare books collection at the Rutgers Law School Library in Newark which includes archives of original material emanating from the Law Revision and Legislative Services Commission, disclosed a memorandum dated December 17, 1974, from a Commission staff member which reads in full as follows:

Assemblyman Eldridge Hawkins, Chairman of the Assembly Judiciary Committee, has asked me to circulate, for comment, the Committee's redrafts of the proposed New Jersey Criminal Code. Enclosed are the Committee's proposed redrafts of Chapters 2 and 3. They are based on the reports on these sections done by the Division of Law Revision which the Committee reviewed at their meetings on November 14 and December 5.
If you would like to submit any comments or suggestions in regard to these proposed redrafts, please convey them to the Chairman or to me.
Annexed to this memorandum is a version of Chapter 2 of the Proposed Code in which the original proposal of the Criminal Law Revision Commission is printed, with all changes typed in. N.J.S.A. 2C:2-6 appears in printed form exactly as proposed in 1971 and adopted in 1978 with the single change of the additions, in typed form, of subsection b(4) as above quoted.
[5] The text of Chapter 2 in the version referred to in note 2, supra, is preceded by a typed table of contents. There is a marginal note of (1) or (3) hand inserted next to three section headings. A typescript at the bottom of the page explains that (1) means "Section changed from text of October 1971 Final Report of the Criminal Law Revision Commission" and that (3) means "Editorial Change-grammatical reason or conformity." There is no note of any kind next to N.J.S.A. 2C:2-6.
[6] We note that the Model Jury Charges approved October 17, 1988, for accomplice liability and vicarious conspirator liability are virtually identical in this respect. Thus for accomplice liability under N.J.S.A. 2C:2-6b(3), the jury is to be charged that the State must prove beyond a reasonable doubt that:
1. ____________________ committed the crime of
 (name of other person)
 _____________________.
 (the substantive crime)

2. The defendant acted purposely to promote (to bring it into being, to advance it or launch it) or facilitate (to make it easier to accomplish) the crime of
 _____________________.
 (the substantive crime)
For vicarious conspirator liability the jury is to be charged that the State must prove that another person committed the crime which defendant conspired with him to commit. The conspiratorial element is, further, to be charged as follows:
1) That defendant agreed with ____ (select appropriate language); and
2) That when the defendant so agreed with ____ the defendant's purpose, i.e., (his/her) conscious object, was to promote or to make it easier for ____ to commit the crime of ____.
[7] See generally addressing the theoretical bases of imputed liability for another's recklessness, Paul H. Robinson, Imputed Criminal Liability, 93 Yale L.J. 609, 642-647 (March 1984); 2 W. LaFave and A. Scott, Substantive Criminal Law § 6.7(e) at 149-152 (1986); Echols v. State, 818 P.2d 691, 693-95 (Alaska Ct. App. 1991). See also State v. Gruber, 264 N.W.2d 812 (Minn. 1978) (one who is not the primary actor of a crime may be found guilty of aiding a heat-of passion manslaughter, but on the record, evidence was insufficient to sustain manslaughter conviction); People v. Turner, 125 Mich. App. 8, 336 N.W.2d 217, 219 (1983) ("although proof of specific intent is essential for specific intent crimes, it does not follow that there can be no aider and abettor liability for a crime which requires neither specific intent or malice"); State v. Guyton, 635 S.W.2d 353, 358 (Mo. Ct. App. 1982) ("[i]f the defendant aids the actor in an assault, with the intent to promote that offense, and the actor unintentionally kills the victim; then the defendant is liable for manslaughter as an aider and participant."); State v. Mendez, 575 S.W.2d 36, 38 (Tex. Crim. App. 1979) ("[i]t is entirely possible to intentionally solicit or assist an individual in committing a reckless act"). Although the authority yields no clearly unifying theory or point of view, we are persuaded that § 2.06(4) of the Model Penal Code, infra, presents the most logical and fairest resolution consistent with general Code principles of individual culpability.
[8] This section was originally proposed by the Model Penal Code as § 2.04(4) and the Tentative Draft Comment is consequently to that section.
[9] N.J.S.A. 2C:2-2b(3) provides that:

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation."
[10] N.J.S.A. 2C:2-3c provides in full that:

"When the offense requires that the defendant recklessly or criminally negligently cause a particular result, the actual result must be within the risk of which the actor is aware or, in the case of criminal negligence, of which he should be aware, or, if not, the actual result must involve the same kind of injury or harm as the probable result and must not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense."
[11] Even if there had been sufficient evidence, the conviction for knowing or purposeful murder would have to be reversed because, as we have said, the judge instructed the jury to consider only the co-conspirators' state of mind in respect of that crime, not defendant's.